STATE OF CONNECTICUT *v.* JOHN KAMINSKI
(AC 27627)

McLachlan, Harper and Peters, Js.

Argued November 29, 2007—officially released February 26, 2008

*Arthur L. Ledford*, special public defender, for the appellant (defendant).

*Robin S. Schwartz*, assistant state's attorney, with whom, on the brief, were *Scott J. Murphy*, state's attorney, and *Paul N. Rotiroti*, senior assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, John Kaminski, appeals from the judgments of conviction, rendered following his conditional pleas of nolo contendere pursuant to General Statutes § 54-94a, of six counts of sexual assault in the first degree in violation of General

Statutes § 53a-70 (a) (2).[1] On appeal, the defendant claims that the court improperly (1) determined that the warrant to search his apartment did not lack probable cause, (2) denied his motion to suppress all of the evidence seized under the search warrant, (3) made a determination that was beyond the scope allowed under the circumstances of the case and (4) denied his request for a *Franks* hearing.[2] We affirm the judgments of the trial court.

The following facts are relevant to our resolution of the defendant's claims on appeal. In the ruling on the defendant's motion to suppress, the court found that "[s]ix months after completing probation for his sexual assault of a fourteen year old girl in 1993, [the defendant], a forty-nine year old man, brought another fourteen year old girl[3] to his apartment and took photographs of her." The defendant had agreed with the young girl's mother that he would take photographs of the girl for her modeling career. The mother had signed a written agreement but had not yet had the signature appearing on that agreement notarized. Most importantly, the agreement contained a provision that

[1] General Statutes § 53a-70 (a) provides in relevant part: "A person is guilty of sexual assault in the first degree when such person . . . (2) engages in sexual intercourse with another person and such other person is under thirteen years of age and the actor is more than two years older than such person . . . ." In the present appeal, the defendant is challenging whether there was probable cause to issue a search warrant for risk of injury to a child pursuant to General Statutes § 53-21. The evidence obtained through the search yielded a plethora of incriminating evidence against the defendant.

[2] *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978), provides authority permitting a defendant to challenge the truthfulness of an affidavit supporting a search warrant, provided the defendant has made a "substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . ." Id., 155–56.

[3] In accordance with our policy of protecting the privacy interests of the victims of sexual abuse, we decline to identify the victim or others through whom the victim's identity may be ascertained. See General Statutes § 54-86e.

the mother would be present at all of the photography sessions.

On February 24, 2004, the defendant picked up the girl at an address different from her mother's address and took her to his residence. The defendant had informed the girl that they would be meeting to discuss her modeling career. After they arrived at his residence, however, he asked her to change into a man's button-down shirt so he could take photographs of her. At the defendant's request, the girl went into the defendant's bedroom and selected a button-down shirt. Below her waist, the girl was wearing only thong underpants.[4] The defendant then proceeded to take thirty photographs of the girl in a variety of poses. In its memorandum of decision on the motion to suppress, the court stated: "The [defendant] told the girl to pose any way she liked. In some of the thirty photographs taken, the girl wore only thong panties on the lower portion of her body; in one of those photographs, which was provided to the court, the girl is pictured sitting down with her knees drawn up to her chin and her crotch area exposed, covered only by the thong panties. In another photograph, the girl is pictured lying on her stomach wearing a man's dress shirt and thong panties, the dress shirt has raised up on her back and a portion of her buttocks is exposed.[5]

"After taking the photographs, the [defendant] sent them via his computer to an unidentified third person, advising that person [that] he would be taking more pictures on Friday, February 27, 2004, with a better camera and asking the recipient of these photographs

---

[4] It is unclear from the photographs whether the girl was wearing a sweater under the button-down shirt, which is asserted by the defendant. Nevertheless, under the button-down shirt below her waist, the young girl was wearing only thong panties.

[5] This photograph was not supplied to the court; however, the girl described it to the police.

to let him know if he wanted those photographs as well." The defendant had asked the girl to meet him on that Friday to take more photographs. For this photography session, the defendant "asked her to wear 'little girl type' panties on that date because, he said, 'the company' liked the models to wear such panties."

The defendant then drove the girl back to the location from which he had retrieved her, the residence of the family friends where she had been staying. After the girl informed these family friends where she had been and showed them the photographs, they became concerned and alerted the police about the defendant's involvement with the girl.

The victim informed the police that while at the defendant's apartment the defendant showed her a web site named "LiL'Amber.com." The court stated: "This web site features young females (preteens and young teenagers) dressed in panties, bathing suits and half shirts." The police could not fully access the web site, which they classified as "child erotica," because it required a fee.

During their investigation, the police discovered that "[i]n 1999, apparently while still on probation for his sexual assault conviction, the [defendant] had used a credit card to purchase access to a web site featuring child pornography. This web site had been the subject of a seizure carried out by the Dallas, Texas, police department in the course of a nationwide investigation of child pornography and the Internet, and the [defendant's] name was found on a listing of individuals who had purchased access to the web site."

Also, while on probation, the defendant informed his probation officer that he was "self-employed in the janitorial and real estate maintenance business . . . ." Moreover, "he had never mentioned to his probation

officer that he was intending to go into the child modeling or photography fields."

On the basis of the defendant's behavior with the fourteen year old girl and his other actions, the police submitted an affidavit to a Superior Court judge in support of an application for a search warrant to search the defendant's residence, which was based on risk of injury to a child. The court stated: "In addition, the affiants, two veteran New Britain detectives, relying on their 'training and experience,' informed the issuing judge that, although the images appearing on the 'Lil'Amber' web site did not appear to be child pornography, as defined in General Statutes § 53a-193 (13), 'persons who focus on children as sexual objects often collect these images [known as 'child erotica'] as well as child pornography' and often use them in their seduction of child victims. Further, the affiants averred that 'persons involved in sending or receiving child erotica or pornography tend to retain it for long periods of time' on their computers and in other formats, such as diskettes or CD-ROMS, that computer hardware, software and documentation are important to a criminal investigation both as storage media for information about crimes and as instrumentalities and/or evidence of the crimes, themselves, that 'persons who focus on children as sexual objects often collect sexually explicit materials consisting of photographs, digital images, video files, audio tapes and files or other computer files, depicting children of a particular age group.' Finally, the affiants state that to retrieve data from a computer system, it is necessary for the entire system to be seized and submitted to a computer specialist for examination and analysis in a laboratory setting."

On the basis of this affidavit, the court issued a search and seizure warrant. The search yielded a plethora of incriminating evidence against the defendant, including photographs of the defendant engaged in sexual acts

with unconscious minors, which led to the six sexual assault charges to which he later pleaded guilty. Subsequently, the defendant moved to suppress the evidence obtained on three grounds: (1) lack of probable cause, (2) lack of particularity in the description of the items seized and (3) material representations made by police in the affidavit that were either intentionally false or made with reckless disregard as to their truth or falsity.

On April 25, 2005, the court, *Shortall, J.*, granted the motion to suppress in part concerning two items[6] and denied the motion to suppress regarding the other items. In regard to the other items, the court concluded that the search warrant was valid and "described quite specifically computer and photographic equipment for which adequate probable cause is established in the affidavit supporting the application." The court also drew the same conclusions for the "collections of photographs depicting children in a particular age group in nude or seminude poses, or engaging in sexual activity," on the basis of the defendant's previous conviction and actions taken with the young girl during and after the photography session.

Subsequently, the defendant filed a motion for articulation, and the court issued a supplemental memorandum of decision on May 12, 2005. On September 25, 2005, the defendant moved to reargue the motion to suppress, averring that he had learned information that was not available at the time the motion was filed, heard and decided. According to the defendant, this

---

[6] The items were listed as items seven and twenty, which were described as one brown bag containing documents, catalogs, photographs, letters, papers and one bag of several documents, including an Internet receipt for Rohypnol tablets. The court concluded that the seizure of these items "could only have been made pursuant to those portions of the warrant which the court holds were not described with sufficient particularity to satisfy the constitution and as to which probable cause was not established in the application . . . ."

new information consisted of statements in the search warrant affidavit that the mother had not signed the model release form, when she had in fact signed it, but had failed to have the signature notarized, and that the girl was living not with the mother but at the address where the defendant met her on the day of the photography session.

On September 29, 2005, with the state in agreement, the court granted the defendant's motion to reargue. After granting the motion to reargue, the court heard argument in which the defendant claimed that the police officers who sought the warrant to search his apartment intentionally or recklessly omitted facts from the affidavit, which were material to the finding of probable cause for risk of injury to a child. After analyzing the defendant's claims, the court concluded: "All of [the] facts allow for the reasonable inference that this was a subterfuge devised by the [defendant] to lure this child into a situation harmful to her moral, mental and even physical welfare, and none of them is challenged by the motion to reargue. The claims relied on in the motion to reargue are either unsupported by the exhibits submitted in support of the motion or immaterial to the finding of probable cause." Thus, the court again denied the defendant's request for suppression of the remaining evidence and also denied his request for a *Franks* hearing.

On February 14, 2006, the defendant pleaded guilty to six charges of sexual assault in the first degree in violation of § 53-70 (a) (2). The matters were continued for sentencing, which occurred on April 11, 2006. The court, *Clifford, J.*, sentenced the defendant to a total effective term of fifty years imprisonment, execution suspended after twenty-five years, twenty years of which is the mandatory minimum time, followed by twenty-five years of probation. This appeal followed.

I

The defendant first claims that the court improperly denied his motion to suppress all of the items that the police seized from his residence because the search warrant failed to demonstrate probable cause. Particularly, the defendant asserts that the search warrant lacked probable cause for the crime of risk of injury to or impairing the morals of a child because the police did not show probable cause that evidence of a crime would be found. He argues that the court improperly: (1) concluded that the defendant created a "situation" where the "victim would be 'lured' into a situation where her moral, mental and even physical welfare would be at risk," (2) relied on case precedent as authority to find probable cause in a situation based on the suspect's prior criminal record and (3) relied on case comparisons that are distinguishable from the present case. We disagree.

The record reflects that the police filed an application for a warrant to search the defendant's residence, which is where the defendant took the photographs of the victim. Thomas N. Hayes and James P. Wardwell, detectives with the New Britain police department, submitted the application as well as their affidavit in support of the warrant application. The application was for: "Computer Systems . . . printers, scanners, cables, internal and external hard disk drives, CDR Disks, CD Disks; DVD Disks, Data Tapes, Diskettes, all other electronic storage media, and all data contained therein including text files, graphic image files, and electronic mail, and computer printouts—including printouts of digital photographs or e-mail. Cameras, Digital Cameras, video cameras, videotapes, audio tapes, pictures, slides, undeveloped film; collections of photographs depicting children in a particular age group in nude or seminude poses, or engaging in sexual activity; hand written

notes, mail, canceled mail, phone records, address books."

In their affidavit, Hayes and Wardwell averred, on the basis of their personal knowledge, years of training and experience, and statements given by the victim and her mother, that on February 24, 2004, the victim's family friend telephoned one of the affiants to report that "he was concerned about the well being of a [four-teen] year old female acquaintance who he believed was having 'dirty pictures' taken of her by an adult male." The girl informed the police that the defendant had "asked her if she would wear a [man's] button down dress shirt in order to give the 'Daddy's Little Girl' look for the photographs . . . ." According to the affidavit, she "posed for photos for [the defendant] wearing nothing but the man's shirt and 'thong' panties." She told police that during the photography session, the "shirt did [rise] up her back and exposed a portion of her 'butt' which she thought was the 'worst' picture taken of her by [the defendant]." She also informed the police that the defendant asked her to return for another photography session wearing " 'little girl type panties,' " that he had sent an e-mail containing the photographs to an unknown person, asking if he wanted more photographs and that he showed her a web site entitled "Lil'Amber.com," which the affiants classified as "child erotica."

The affiants also averred that the defendant had a criminal record for sexual assault in the second degree and risk of injury to an " 'incapacitated' [m]inor who had to be lifted from her wheel chair" for the assault to be perpetrated. They revealed that the defendant had been linked to a nationwide investigation involving the distribution of child pornography over the Internet.[7]

---

[7] The police investigation of the defendant occurred after the girl's statement was taken concerning the defendant's behavior, and, as a result of this investigation, the police discovered that the defendant's name had been linked to an Internet pornography investigation called the "Avalanche" investigation.

They also averred the fact that the defendant sent the photographs of the victim over the Internet. Most importantly, on the basis of their training and experience, they claimed that the fact that the defendant showed the girl a child erotica web site was consistent with behavior of a sexual predator because "such materials are often used in the seduction of child victims by persons who focus on children as objects of their sexual desires."

The affiants claimed that "persons involved in sending or receiving child erotica or pornography tend to retain it for long periods of time. Individuals who are interested in child erotica or pornography, prize the images obtained, traded and/or sold. In addition to their emotional value, the images are economically valuable in return for currency or similar images traded by another pornographer. Thereafter, pornographic images are rarely destroyed or deleted by the individual collector. Data that is deleted from the computer media may still remain on the media and may be recovered during a thorough forensic exam by trained personnel."

On the basis of the allegations contained in the affidavit, the warrant was issued, and the police executed the warrant at the defendant's residence. The police discovered several incriminating images and forms of media depicting the defendant engaging in sexual relations with unconscious minors. The defendant was then charged with sexual assault in the first degree on the basis of the evidence seized. The defendant filed a motion to suppress the evidence seized. The court granted the motion as to two items and denied the motion as to the other items seized.

The standard of review in connection with the court's denial of a motion to suppress is well settled. As stated by our Supreme Court: "This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and

logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go. . . . In other words, to the extent that the trial court has made findings of fact, our review is limited to deciding whether those findings were clearly erroneous. Where, however, the trial court has drawn conclusions of law, our review is plenary, and we must decide whether those conclusions are legally and logically correct in light of the findings of fact." (Internal quotation marks omitted.) *State* v. *Nowell*, 262 Conn. 686, 694, 817 A.2d 76 (2003); see also *State* v. *Foote*, 85 Conn. App. 356, 360, 857 A.2d 406 (2004), cert. denied, 273 Conn. 937, 875 A.2d 43, 44 (2005); *State* v. *Carcare*, 75 Conn. App. 756, 764, 818 A.2d 53 (2003).

The defendant's main contention is that his motion to suppress should have been granted as to all of the seized items because the warrant affidavit lacked probable cause. Particularly, the defendant asserts that "[p]robable cause to search exists if: (1) there is probable cause to believe that the particular items to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched." See General Statutes § 54-33a. The underlying offense was risk of injury to or impairing the morals of a child in violation of General Statutes § 53-21 (a) (1). According to the defendant, the language of § 53-21 is inapposite to the finding of probable cause in this action.

Pursuant to § 53-21, risk of injury to a child occurs when someone "wilfully or unlawfully causes or permits any child under the age of sixteen years to be placed in such a situation that the life or limb of such child is endangered, the health of such child is likely to be injured or the morals of such child are likely to be impaired, or does any act likely to impair the health or morals of any such child . . . ." General Statutes § 53-21 (a). On the basis of this language and case law, the defendant contends that there was no risk of injury to a child because there were no " 'acts' that involve direct touching of the victim's person and are or are likely to be injurious to the victim's physical health." On the basis of the facts in the case, the court concluded that the defendant created a "situation" that was dangerous to the morals and mental and physical welfare of the child, and, therefore, his behavior was within the contemplated protections of § 53-21 (a) (1). Conversely, the defendant contends that the court's conclusion does not comport with the language of § 53-21 (a) (1).

In opposition, the state argues that the factual allegations in the warrant affidavit and the reasonable inferences drawn therefrom support the finding of probable cause. Specifically, the state contends that there were sufficient facts in support of the particular evidence seized and that the items would be found in the place to be searched, the defendant's residence. In support of its argument, the state emphasizes that the general purpose of § 53-21 "is to protect the physical and psychological well-being of children from the potentially harmful conduct of adults." *State* v. *Payne*, 240 Conn. 766, 771, 695 A.2d 525 (1997), overruled in part on other grounds by *State* v. *Romero*, 268 Conn. 481, 490, 849 A.2d 760 (2004). This purpose includes "situation" language of the risk of injury statute, and it does not require actual injury to the child. We agree with the state's argument and agree that there was probable cause to

conduct such a search as to the items not suppressed by the court.

It is undisputed that "[p]robable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . [I]t is axiomatic that [a] significantly lower quant[um] of proof is required to establish probable cause [rather] than guilt. . . . [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our citizens' . . . demands. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts." (Citations omitted; internal quotation marks omitted.) *State* v. *Batts*, 281 Conn. 682, 700–701, 916 A.2d 788, cert. denied, 552 U.S. 1047, 128 S. Ct. 667, 169 L. Ed. 2d 524 (2007).

"Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on the issue, therefore, is subject to plenary review on appeal. . . . Because this issue implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the

court's decision was supported by substantial evidence." (Citations omitted; internal quotation marks omitted.) Id., 701–702. Furthermore, "[w]e view the information in the affidavit in the light most favorable to upholding the [issuing judge's] determination of probable cause." (Internal quotation marks omitted.) *State* v. *Eastwood*, 83 Conn. App. 452, 460–61, 850 A.2d 234 (2004).

Moreover, our Supreme Court has described the apparent legislative purpose of § 53-21 as being to criminalize "deliberate indifference to, acquiescence in, or the creation of situations inimical to the minor's moral or physical welfare . . . ." (Citation omitted; internal quotation marks omitted.) *State* v. *Pickering*, 180 Conn. 54, 64, 428 A.2d 322 (1980). It also has concluded that "it is not necessary to have any touching of any part of the body" for a violation of § 53-21 to occur. *State* v. *Perruccio*, 192 Conn. 154, 159–60, 471 A.2d 632, appeal dismissed, 469 U.S. 801, 105 S. Ct. 55, 83 L. Ed. 2d 6 (1984). Instead, "the creation of a prohibited situation is sufficient" to violate the statute. Id., 160.

Viewing the information in the affidavit in the light most favorable to upholding the court's finding of probable cause, there was sufficient support for a finding of probable cause for the items not suppressed by the court. Probable cause existed with regard to the computer systems, cameras, video equipment, tapes, DVDs, photographs, printouts and other electronic media storage because the affidavit contained allegations that the defendant had taken photographs of a fourteen year old girl wearing a man's button-down shirt and thong panties. He had asked her to wear "little girl type" panties for the next photography session, he e-mailed the photographs of her over the Internet and showed her child erotica. Moreover, the affiants alleged facts relating to the defendant's prior arrest for which he was convicted of sexually assaulting a fourteen year

old girl. Thus, there was probable cause that these items were related to criminal activity and would have assisted in the defendant's conviction.

The defendant adamantly contests the court's finding of probable cause and attacks the precedent relied on by the state that supports the court's conclusion that there was probable cause underlying the search warrant affidavit. In *State* v. *Zarick*, 227 Conn. 207, 630 A.2d 565, cert. denied, 510 U.S. 1025, 114 S. Ct. 637, 126 L. Ed. 2d 595 (1993), the defendant entered nolo contendere pleas to several charges, including one count of sexual assault in the first degree in violation of § 53a-70. The defendant's wife had taken film to be developed at a photography lab. Id., 212. The photography lab technician, concerned by the images, alerted the police to the defendant's photographs, which contained images of nude and seminude children. Id. The police applied for a search warrant for risk of injury to a child on the basis of the photographs and the knowledge that the defendant had been identified in four separate incident reports by the Waterbury police department for taking photographs of young children from his vehicle. Id., 213. The police seized numerous items that the defendant later moved to suppress. Id., 214. Similar to this case, the defendant in *Zarick* argued that the warrant had been issued without probable cause.[8] His motion was denied, and our Supreme Court affirmed the decision. Id., 229.

Similar to the photographs in *Zarick*, the photographs in the present case were brought to the attention of the

[8] In his reply brief, the defendant contends that *Zarick* is distinguishable because the defendant there challenged § 53-21 on first amendment grounds. The defendant claims that because the conviction was upheld on different grounds, we cannot rely on that case or the other cases relied on by the state. Essentially, the defendant is asking us to read the beginning and the end of the opinion, skipping the analysis of the law in between. This is simply unacceptable. While *Zarick* may have been upheld on a different basis, our Supreme Court analyzed the probable cause issue raised in the case, and, thus, the state's reliance on *Zarick* is appropriate.

police by a concerned adult, who viewed the images the defendant had taken. Additionally, the police, like the police in *Zarick*, were aware of the behavior patterns and techniques utilized by child molesters. For example, in the present case, the police, with years of training and experience in this field, informed the court that having a young child view Internet pornography or, in this case, "child erotica," is a technique used in order to seduce children. In *Zarick*, the police were also aware that the defendant had been reported for photographing young children from his van, a highly suspect behavior. Similarly, the police here were aware that the defendant had a prior conviction for sexually assaulting a young girl of the same age as the alleged victim. He took photographs of the girl in the present case in a man's button-down shirt and a pair of thong panties. The court saw at least one of the photographs in which the girl's crotch was covered by only the thong panties she was wearing, and an affidavit from the girl that the defendant had taken a photograph of her in which a portion of her buttocks was exposed. She also testified that the defendant would not give her that photograph. Moreover, he e-mailed those photographs to an unknown person, asking if he or she wanted more and scheduled another photography session with the girl. Additionally, the police had evidence that the defendant had purchased access to a pornographic Internet site. All of this evidence taken together supports the issuing judge's finding of probable cause.[9]

Conversely, in his reply brief, the defendant challenges the state's reliance on cases such as *Zarick*,

---

[9] There are other cases that buttress our conclusion that the facts taken together support a finding of probable cause. See *State* v. *Palangio*, 24 Conn. App. 300, 588 A.2d 644 (upholding constitutionality of risk of injury statute in light of challenge by defendant who took photographs of children in compromising positions, telling them it was for their modeling careers), cert. denied, 218 Conn. 911, 591 A.2d 813 (1991); *State* v. *Manluccia*, 2 Conn. App. 333, 478 A.2d 1035 (upholding admission of certain items at defendant's risk of injury trial), cert. denied, 194 Conn. 806, 482 A.2d 711 (1984).

claiming that "the state chose to focus its argument on the defendant's previous conviction and the shocking nature of the items seized in the illegal search; obviously, the purpose is to divert this court's attention away from the merits of the case and toward its shock value." While this point is duly noted, the law relied on by the state and the court strongly supports a finding of probable cause.[10]

In opposition, the defendant claims that the court should have based its resolution of his claim on *Krukowski* v. *Swords*, 15 F. Sup. 2d 188 (D. Conn. 1998), rather than the cases it relied on. The defendant's reliance on *Krukowski*, however, is unavailing because it is distinguishable from the present case. *Krukowski* involved a motion for summary judgment filed by the plaintiff, who was previously charged with a violation of § 53-21. The criminal charges against the plaintiff had been dismissed, but the state indicated that it would prosecute him if he were to engage in similar conduct again. Thus, the plaintiff brought a federal civil rights action challenging Connecticut's risk of injury statute, on its face and in violation of the first and fourteenth amendments to the United States constitution, and seeking to enjoin future application of § 53-21 against him. Id., 194. The plaintiff was searching for suitable models to start his own modeling agency. Id., 190. A fifteen year old girl and her mother had hired him to be the girl's agent. Id. They had executed several release forms, giving him authority to act as the girl's agent. Most distinctively, the plaintiff and the girl's mother

---

[10] The court relied on *State* v. *Eastwood*, supra, 83 Conn. App. 462, stating that "[i]n *Eastwood*, the facts provided to the issuing judge recited only an arrest for alleged sexual activities with a thirteen year old boy; here, the affidavit reflects the [defendant's] conviction for sexual assault of a girl . . . ." Furthermore, the court stated that "[g]iven the assaultive conduct of which the [defendant] had previously been convicted, the 'situation' he created for this fourteen year old was one in which not only her morals but also her health, physical as well as mental, were likely to be injured."

entered into a written release "to conduct modeling sessions with [the girl], including specific permission . . . to include seminude posing by [the girl]. Id., 191. The plaintiff, acting as her agent, was present for several photography sessions in which the girl had been photographed in revealing, seminude poses. Id., 191–92. The plaintiff, the girl's mother and the photographer were all prosecuted under § 53-21. After the prosecution was resolved in the plaintiff's favor, the plaintiff brought the federal claim to enjoin future application of § 53-21 against him.[11] Relying on the federal case, the defendant in the present case urges us to conclude that he is like the plaintiff in *Krukowski* and should not be found to have created a "situation" that violates the tenets of § 53-21. We do not agree with the defendant's contention.

*Krukowski* is not only factually distinguishable from this case, it is also legally distinguishable. First, *Krukowski* is different in that the plaintiff there wanted to start a legitimate modeling business and hired a photographer to conduct the sessions. This photographer was present at all of the sessions. In *Krukowski*, the plaintiff engaged in a legitimate business as a modeling agent. Conversely, it is unclear whether the defendant in the present case wanted to create a legitimate modeling agency, and, moreover, he was the only person present with the girl during the photography session. Another

---

[11] The plaintiff in *Krukowski* prevailed, and the court held that because he engaged in "non-obscene, non-pornographic modeling sessions with a fifteen-year old model who participa[ted] voluntarily and with the consent of a parent, and in a context devoid of any allegations of sexually explicit physical conduct by the accused," he was entitled to injunctive relief. *Krukowski v. Swords*, supra, 15 F. Sup. 2d 205. Here, the girl was photographed in a man's button-down shirt and a pair of thong panties. She may have participated with the consent of her mother, but this consent was negated when the defendant violated the provision of the agreement that mandated that the mother be present during photography sessions. Most importantly, here the defendant told the girl to wear "little girl type" panties next time and e-mailed the photographs to an unknown person.

factual dissimilarity between the cases is that in *Krukowski*, the plaintiff obtained written permission from the girl's mother and even went to the extent to discuss seminude modeling with the mother and to obtain written permission for such poses. Conversely, although the defendant here may have obtained written permission from the mother, even though the signature was not notarized, the defendant violated the provision of the agreement providing that the girl's mother would be present at all sessions. Thus, the defendant here was in breach of this provision, which was designed to protect the girl. The most striking difference between the two cases, however, is that the plaintiff in *Krukowski* did not have a prior record of sexually assaulting a girl, nor was he implicated in an Internet pornography web site investigation.

Second, these cases are distinguishable legally because in *Krukowski*, the plaintiff challenged the constitutionality of Connecticut's risk of injury statute.[12] The defendant in the present case, however, is challenging the validity of the search warrant. Thus, the defendant's insistent reliance on *Krukowski* is misplaced.

We conclude that the allegations contained in the warrant application, as well as the contention that the defendant, a man previously convicted of sexual assault of a child, was engaged in conduct known to be a modus operandi of child molesters, were sufficient to allow a judge to find probable cause for the crime of risk of injury to a child. See *State* v. *Zarick*, supra, 227 Conn. 223. Thus, we reject this claim set forth by the defendant.

---

[12] Interestingly, in the defendant's reply brief, he claims that the state cannot rely on *Zarick* because in that case, the defendant's conviction was upheld on a first amendment challenge to § 53-21. Ironically, in light of his argument opposing the state's reliance on *Zarick*, the defendant would have us rely on *Krukowski*, in which the defendant raised a first and fourteenth amendment challenge to § 53-21. See footnote 11.

## II

The defendant next claims that the court's determination was beyond the scope allowed under the circumstances of the case. Particularly, the defendant contends that the warrant did not indicate that there was probable cause for risk of injury to a child. He asserts that the court had to justify probable cause on the basis of a "situation" created by the defendant and that it failed to do that. The defendant points to the cases relied on by the court, which examine the "situation" component of § 53-21, and claims that the current case "does not directly examine the situation that will cause risk of injury but takes it a step further; it regulates the situation which will 'lure' the child into a subsequent situation where the child may be placed at risk of injury to her morals." This is essentially the same argument asserted previously. Thus, because the search warrant contained sufficient probable cause for it to be issued, there is no need to address this claim.

## III

The defendant next claims that the court improperly denied his request for a *Franks* hearing. The defendant filed a motion to reargue the motion to suppress on the basis of new evidence obtained that was not available when the motion to suppress was argued. Such new evidence included a sworn copy of the victim's affidavit and the mother's affidavit taken by the police, a signed copy of the model release form and an investigation into the use of a credit card purchase for access to a child pornography web site. He claimed that in light of this new information, his request for a *Franks* hearing should have been granted because the police officers had made "false statements or omissions that were material to the finding of probable cause" and that these statements "were intentionally or recklessly made by the affiants." His motion to reargue was granted. After

a hearing, the court denied the defendant's request for the *Franks* hearing.

"In *Franks* v. *Delaware*, [438 U.S. 154, 155–56, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978)], the United States Supreme Court held that a defendant may challenge the truthfulness of an affidavit supporting a search warrant, provided the defendant has made a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . . If this statement is necessary to the finding of probable cause, the [f]ourth [a]mendment requires that a hearing be held at the defendant's request. . . . The court stated also that [t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. . . . The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant. . . . Whether the defendant is entitled to a hearing pursuant to *Franks* . . . is a mixed question of law and fact that [is reviewable] on appeal." (Citations omitted; internal quotation marks omitted.) *State* v. *Batts*, supra, 281 Conn. 695–96.

The defendant claims that he is entitled to a *Franks* hearing because the new evidence he has obtained supports his contention that the police made allegations in the search warrant affidavit that were intentionally false or made recklessly. First, the defendant claims that the credit card purchase involving the distribution of child pornography over the Internet was investigated by the defendant's probation officer in 2003 and that no additional information was developed. The defendant

claims that failing to mention this investigation casts serious doubt as to the truth of the statements by the police officers, that the statements were made with "reckless disregard for the truth" and that this information was "material to probable cause."

The defendant makes a similar assertion pertaining to the mother's affidavit, in which she informed the police that she had signed the model release form, and the police incident report. He contends that the police, in their affidavit, intentionally failed to mention that the model release was signed by the alleged victim's mother. He argues that because the warrant did not mention the mother's signature on the release, it implies that the photographs were taken without the mother's consent and that this was material to a finding of probable cause. Furthermore, the defendant maintains that the warrant indicates that, on the day of the photography session, the defendant picked up and dropped off the victim at an address, which was not her mother's address. The police incident report, however, indicates that the victim informed the police that she resides at both addresses, her mother's and the address where she met the defendant. Thus, the defendant claims that this omission was material to a finding of probable cause because it goes to the consent of the mother, in that it "creates a belief that the defendant 'lured' the alleged victim into meeting him at an alternative location away from her home."

In response, the state argues that the court properly denied the defendant's request for a *Franks* hearing. Particularly, the state asserts that the defendant failed to make "a substantial preliminary showing that the warrant affiants omitted evidence . . . which was material to probable cause. He also failed to show that, even if the affiants had omitted information, the inclusion of that information would have defeated probable cause." The court, upon rendering its decision after

granting the defendant's motion to reargue and hearing testimony, concluded that the defendant had failed to make a "substantial preliminary showing that material facts were omitted from the affidavit knowingly and intentionally or with reckless disregard for the accuracy of the affidavit." (Internal quotation marks omitted.) The court found that there was no omission of fact because upon reading the affidavit as submitted to the issuing judge, it was clear that the girl's mother had given permission for the photography session.[13] Moreover, the court also rejected the defendant's claim that the police intentionally or recklessly omitted the fact that the girl did not live at the address where the defendant had picked her up on February 24, 2004. As the court concludes, "[i]n her statement to the police, the girl merely says that [the defendant] picked her up 'at my friend's house on Fairview Street.' . . . The police report describes the Fairview Street address as a place 'where [the girl] had been staying with a friend.' . . . In any event, what was material was the fact that the [defendant] picked her up at a location from which her mother was absent even though he was not supposed

[13] The court points out that the mother knew that photographs were to be taken of her daughter; however, nothing in her mother's sworn statement to the police "establishes that she knew they were to be taken that day . . . . And it is the [defendant's] photographing of the daughter on February 24, 2004, in the absence of her mother, that is the material fact. So, there is no factual support for the allegation that the police omitted a material fact from the affidavit."

Additionally, the defendant asserts that the police intentionally or recklessly omitted the fact that the mother had "fully executed" a model release form. The court concluded that while the affidavit stated that the mother "produced an unsigned 'Model Release Form' " and the police incident report did state that the mother had "produced a written consent/agreement which [the defendant] had her read and sign," the court determined that this statement was not made in reckless disregard, nor was it material. The court concluded that, "even if the affidavit had stated that the mother had produced a signed model release form, probable cause would still have existed to believe that evidence and/or the instrumentalities of a crime [were] present in the [defendant's] apartment."

to take any pictures without the mother present." (Citations omitted.)

The court denied the defendant's request for the *Franks* hearing, concluding that "[t]he material facts in this affidavit are that a forty-nine year old man who had been convicted of sexually assaulting a fourteen year old girl took another fourteen year old girl to his apartment, alone, and while there showed her a web site of 'child erotica,' took pictures of her in scanty attire and revealing intimate portions of her anatomy and sent those pictures to a person or persons in cyberspace. He did this despite the fact that the model release form, which he had given her mother to sign, specifically provided that [the mother] was to be present at all photography [sessions]. He picked up the girl at a location where her mother was not present, ostensibly to discuss her modeling career, but, when they arrived at his apartment, [he] persuaded her to let him take the pictures described [previously]. The [defendant] had never, before his involvement with this girl and her mother, evinced any interest in photography or modeling career management." Thus, the court concluded that all of these facts allowed for the "reasonable inference that this was a subterfuge devised by the [defendant] to lure this child into a situation harmful to her moral, mental and even physical welfare, and none of them is challenged by the motion to reargue." We agree with the court.

Accordingly, because we conclude that there was sufficient probable cause alleged in the affidavit for the search warrant as to the items not suppressed by the court and that the court properly denied the defendant's request for a *Franks* hearing, we affirm the judgments of the trial court.

The judgments are affirmed.

In this opinion the other judges concurred.