STATE OF CONNECTICUT *v.* ROBERT SHIELDS III
(AC 30560)

Robinson, Alvord and Pellegrino, Js.

Argued June 2—officially released October 26, 2010

*Richard Emanuel,* with whom, on the brief, was *Robert M. Casale,* for the appellant (defendant).

*Timothy J. Sugrue,* assistant state's attorney, with whom, on the brief, were *John A. Connelly,* state's attorney, and *Terence Mariani,* senior assistant state's attorney, for the appellee (state).

*Opinion*

ROBINSON, J. The defendant, Robert Shields III, appeals from the judgment of conviction, rendered following his conditional plea of nolo contendere pursuant to General Statutes § 54-94a,[1] of possession of child

---

[1] General Statutes § 54-94 provides: "When a defendant, prior to the commencement of trial, enters a plea of nolo contendere conditional on the right to take an appeal from the court's denial of the defendant's motion to suppress or motion to dismiss, the defendant after the imposition of sentence may file an appeal within the time prescribed by law provided a trial court has determined that a ruling on such motion to suppress or motion

pornography in the first degree in violation of General Statutes § 53a-196d.[2] On appeal, the defendant claims that the trial court improperly (1) denied his motions to suppress because the affidavit in support of the search warrant application failed to establish probable cause for the search of his home and the seizure of his property therein, and (2) determined that the warrant authorized a forensic examination of the evidence. We affirm the judgment of the trial court.

The record reveals the following relevant facts and procedural history. On November 15, 2005, as the result of a criminal investigation that began in Pennsylvania, Officer Christopher Grillo of the Southbury police department and Trooper Gerard Johansen of the Connecticut state police prepared a search warrant application and affidavit for the search of the defendant's residence at 141 Rocky Mountain Road in Southbury.

The affidavit stated that on November 4, 2005, Grillo received a telephone call from Brian Sprinkle, a detective with the Ferguson Township police department,

to dismiss would be dispositive of the case. The issue to be considered in such an appeal shall be limited to whether it was proper for the court to have denied the motion to suppress or the motion to dismiss. A plea of nolo contendere by a defendant under this section shall not constitute a waiver by the defendant of nonjurisdictional defects in the criminal prosecution."

Our Supreme Court has explained that "[b]ecause this right to appeal the denial of a motion to dismiss is statutory, it is accorded only if the conditions fixed by the statute are met." (Internal quotation marks omitted.) *State* v. *Rhoads*, 122 Conn. App. 238, 244, 999 A.2d 1 (2010).

[2] General Statutes § 53a-196d (a) provides: "A person is guilty of possessing child pornography in the first degree when such person knowingly possesses fifty or more visual depictions of child pornography."

Pursuant to General Statutes § 53a-193 (13), "child pornography" is defined as "any visual depiction including any photograph, film, videotape, picture or computer-generated image or picture, whether made or produced by electronic, mechanical or other means, of sexually explicit conduct, where the production of such visual depiction involves the use of a person under sixteen years of age engaging in sexually explicit conduct, provided whether the subject of a visual depiction was a person under sixteen years of age at the time the visual depiction was created is a question to be decided by the trier of fact."

located in State College, Pennsylvania. Sprinkle informed Grillo that through his investigation of Brian Gayan, a Pennsylvania resident accused of having unlawful contact with minors through the Internet, he learned of an online conversation between Gayan and Jerome Cariaso, also of 141 Rocky Mountain Road. During the conversation, Cariaso made comments regarding sexual contact between him and his eight year old son. Immediately after the call, Grillo confirmed that Cariaso resided at the address provided by Sprinkle.

On November 10, 2005, Grillo received a letter from Sprinkle[3] that revealed that Trooper Glenn Brad of the Pennsylvania state police executed search warrants at Gayan's place of residence and place of employment. A forensic search of his computers revealed that Gayan, using the screen name "Centralpamaster," had contact with seventy-five screen names belonging either to minors or suspects who had spoken with him about abusing their own children or children they knew. Sprinkle obtained a court order, which asked Yahoo, Inc., to provide log-in Internal protocol (IP) addresses for the screen name "Bi06488." Yahoo, Inc., revealed that there was a recent log of IP addresses listed under that screen name. It was found that the IP addresses were owned by Charter Communications, and, on November 4, 2005, Charter Communications indicated that Cariaso, of 141 Rocky Mountain Road, Southbury, was the subscriber for the IP address of 24.151.2.100, the IP address in question.

Additionally, Sprinkle provided Grillo with a transcript of a Yahoo, Inc., messenger conversation

---

[3] Sprinkle also provided Grillo with: (1) a copy of a Yahoo, Inc., chat log; (2) a copy of a Pennsylvania court order sent to Yahoo, Inc.; (3) a copy of the results from Yahoo, Inc.; (4) a copy of a Pennsylvania court order sent to Charter Communications; (5) a copy of the results from Charter Communications; and (6) a copy of a database search from the "Whois" function of www.arin.net.

between "Centralpamaster" and "Bi06488," in which "Bi06488" asked "Centralpamaster" for pornographic photographs of "Centralpamaster's" son. The person using the "Bi06488" screen name informed "Centralpamaster" that they could not swap photographs because he did not currently have pornographic photographs of his son on his computer.[4]

On November 14, 2005, Grillo obtained land records from the Southbury assessor's office indicating that the property located at 141 Rocky Mountain Road was owned by Cariaso, the defendant and Rosalie Shields.[5] Based on the foregoing investigation, Grillo and Johansen submitted a search warrant application seeking to search the subject residence. The warrant affidavit alleged that there was probable cause to believe that Cariaso had violated the following statutes: General Statutes § 53-21, risk of injury to a child; § 53a-196d, possession of child pornography in the first degree; and General Statutes §§ 53a-49 and 53a-196d, attempt to possess child pornography in the first degree. The court, *Brown, J.*, issued the warrant on the same day, authorizing a search of the residence located at 141 Rocky Mountain Road, the seizure and subsequent investigative review of any computer systems found for evidence

---

[4] The record includes documentation that reveals the following Internet conversation, which, according to the chat log, took place on July 1, 2005:

"Centralpamaster: . . . play together in the same room first

"Bi06488: . . . sounds good—u gonna send that pic?

"Centralpamaster: . . . Let's swap pics of our boys

"Bi06488: . . . none on the machine

"Bi06488: . . . but love to get off to a pic of yours right now . . .

"Bi06488: . . . now that pic . . . do I get it?

"Centralpamaster: . . . I have a better idea . . . let's cam

"Bi06488: . . . I want [to shoot] to it now . . .

"Centralpamaster: . . . where is your son?

"Bi06488: . . . practice

"Bi06488: . . . they have this bb team—so he plays . . . ."

[5] Postal records show that the defendant, Rosalie Shields, Cariaso and Peter Modica received mail at the subject residence.

of violations of § 53-21, § 53a-196d, and §§ 53a-49 and 53a-196d, and the transport of the computer systems to the Connecticut state police computer crime and electronics evidence unit (evidence unit).

On November 16, 2005, the police executed the warrant. Upon entering the residence, the police found the defendant, Rosalie Shields and Cariaso. The police seized numerous computer systems from the residence. The evidence unit completed a forensic examination of the defendant's computers and found numerous still and video images depicting child pornography. The forensic examination also revealed extensive evidence that the computers were used by the defendant and not Cariaso. The defendant was arrested and charged with possession of child pornography in the first degree in violation of § 53a-196d and importing child pornography in violation of § 53a-196c.[6]

On August 16, 2006, the defendant filed a motion to suppress the evidence that had been seized, arguing, inter alia, that the search was unlawful because the warrant failed to establish probable cause to believe that child pornography was located within the subject residence. The defendant further argued that the affidavit attached to the warrant failed to establish a connection between the screen name "Bi06488," the IP address and the subject premises. On June 8, 2007, the court, *Cremins, J.,* denied the defendant's motion[7] and concluded that the affidavit supported a reasonable inference that "Bi06488" requested the receipt of pornographic images and that this inference provided the issuing magistrate with a substantial basis from which to conclude that evidence of child pornography would be found in the residence.

---

[6] The state later nolled the charge of importing child pornography.

[7] The court also found that there was no probable cause to search for evidence relating to risk of injury to a child pursuant to § 53-21.

The defendant filed a second motion to suppress on September 11, 2008. He alleged that information discovered subsequent to the court's ruling on the first motion to suppress defeated a finding of probable cause. See *Franks* v. *Delaware*, 438 U.S. 154, 98 S. Ct. 2674, 57 L. Ed. 2d 667 (1978) (holding that when defendant makes substantial preliminary showing that false statement knowingly and intentionally, or with reckless disregard for truth, included by affiant in warrant affidavit, and allegedly false statement necessary to find probable cause, fourth amendment, as incorporated against states by fourteenth amendment, requires hearing be held at defendant's request). On September 16, 2008, the court, *Alander, J.,* heard argument on, and subsequently denied, the defendant's motion. Following the denial of the second motion to suppress, the defendant, on September 17, 2008, entered a written, conditional plea of nolo contendere to possession of child pornography in the first degree. In accordance with the plea agreement, he was sentenced to a term of imprisonment of twenty years, execution suspended after five years, and ten years probation, with conditions including sex offender evaluation and treatment, and registration as a sex offender. This appeal followed. Additional facts will be set forth as necessary.

I

We first address the defendant's claims pertaining to his motions to suppress. "The standard of review in connection with the court's denial of a motion to suppress is well settled. As stated by our Supreme Court: This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine

whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go. . . . In other words, to the extent that the trial court has made findings of fact, our review is limited to deciding whether those findings were clearly erroneous. Where, however, the trial court has drawn conclusions of law, our review is plenary, and we must decide whether those conclusions are legally and logically correct in light of the findings of fact." (Internal quotation marks omitted.) *State* v. *Kaminski*, 106 Conn. App. 114, 124–25, 940 A.2d 844, cert. denied, 287 Conn. 909, 950 A.2d 1286 (2008).

"It is undisputed that [p]robable cause to search exists if: (1) there is probable cause to believe that the particular items sought to be seized are connected with criminal activity or will assist in a particular apprehension or conviction . . . and (2) there is probable cause to believe that the items sought to be seized will be found in the place to be searched. . . . Probable cause, broadly defined, [comprises] such facts as would reasonably persuade an impartial and reasonable mind not merely to suspect or conjecture, but to believe that criminal activity has occurred. . . . [I]t is axiomatic that [a] significantly lower quant[um] of proof is required to establish probable cause [rather] than guilt. . . . [P]robable cause requires only a probability or substantial chance of criminal activity, not an actual showing of such activity. By hypothesis, therefore, innocent behavior frequently will provide the basis for a showing of probable cause; to require otherwise would be to sub silentio impose a drastically more rigorous definition of probable cause than the security of our

citizens' . . . demands. . . . In making a determination of probable cause the relevant inquiry is not whether particular conduct is innocent or guilty, but the degree of suspicion that attaches to particular types of noncriminal acts. . . .

"Whether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on the issue, therefore, is subject to plenary review on appeal. . . . Because this issue implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . Furthermore, [w]e view the information in the affidavit in the light most favorable to upholding the [issuing judge's] determination of probable cause." (Citations omitted; internal quotation marks omitted.) Id., 127–28.

## A

The defendant first claims that the trial court improperly denied his first motion to suppress because the warrant affidavit lacked probable cause to believe that child pornography would be found in the subject residence. The defendant argues that because the affiants failed to link the IP address, 24.151.2.100, to the subject residence at the exact time "Bi06488" had the incriminating conversation with "Centralpamaster" on July 1, 2005, the affidavit could not support a finding of probable cause.[8] Specifically, he argues that the information provided by Charter Communications, that he was the subscriber to the IP address, failed to show that there

---

[8] Although July 1, 2005, was the date provided in the affidavit as the date of the conversation between "Bi06488" and "Centralpamaster," that date was in fact the date Gayan's computer was seized and the conversation decoded by the Pennsylvania police. As discussed in part I B of this opinion, the subject conversation between "Bi06488" and "Centralpamaster" actually took place on May 5, 2005.

was a direct connection between the IP address and the subject residence at the exact time the incriminating conversation occurred. The defendant further argues that the affiants also failed to inform the court that the IP address was most likely dynamic[9] and subject to change, thus rendering the affidavit insufficient to establish probable cause. We disagree.

The record reflects that the police filed an application for a warrant to search the subject premises and for the seizure and subsequent investigative review of any computer systems found for evidence of violations of §§ 53-21, 53a-196d and 53a-49 and 53a-196d. Grillo and Johansen submitted the application as well as their affidavit in support of the application. As provided in the affidavit, in the online conversation between "Centralpamaster" and "Bi06488," "Bi06488" asked "Centralpamaster" to send photographs of "Centralpamaster's" son. Even though "Bi06488" stated that he had no photographs of his own son on his computer, it was reasonable to infer that he had child pornography on the computer because he asked "Centralpamaster" for photographs to view while masturbating. Moreover, the affiants stated that through their training and experience, they knew that those individuals engaged in the sexual exploitation of children will trade child pornographic photographs with others

---

[9] The trial court found: "[M]any Internet service providers limit the number of IP addresses that are permanently assigned to a specific device, otherwise known as static IP addresses, and economize on the remaining number of IP addresses they possess by temporarily assigning an IP address to a requesting Dynamic Host Configuration Protocol (DHCP) computer from a pool of IP addresses known as dynamic IP addresses. Dynamic addresses can be shared or rotated amongst many devices, although no two devices can use the same IP address at the same time. A requesting DHCP computer receives a dynamic IP address for the duration of an Internet session or for some other specified amount of time. Once a user disconnects from the Internet, his or her dynamic IP address goes back into the IP address pool so it can be assigned to another user."

through the Internet and will retain them on their computer systems for long periods of time, as the photographs have economic and emotional value.

Additionally, in a letter incorporated into the affidavit, Sprinkle stated that after Yahoo, Inc., sent him the IP address associated with the Yahoo, Inc., screen name "Bi06488," he was able to resolve through www.arin.net, that the IP address was owned by Charter Communications. In response to a September 19, 2005 court order, he received a fax from Charter Communications on November 4, 2005, indicating that on August 3, 2005, the subscriber for the IP address 24.151.2.100 was Cariaso, of 141 Rocky Mountain Road, Southbury.

On the basis of the allegations contained in the affidavit, the warrant was issued, and the police executed the warrant at the subject premises. The police discovered numerous computer systems in the home. Fifty-eight exhibits were seized from the residence and transported to the evidence unit, which eventually was able to connect the defendant to a large portion of the images.

Thereafter, the trial court determined that "[t]he affidavit presented to the magistrate included information that a person using the screen name Bi06488 attempted to possess child pornography and was currently residing at that address. Although the affidavit lacked a statement explicitly linking the IP address to 141 Rocky Mountain Road at the time Bi06488 had the incriminating conversation with Centralpamaster, the issuing magistrate was free to draw upon his common sense to infer that there was a fair probability that Charter Communications supplied the address of the IP user on the particular date and time of the conversation because that was the only sensible thing for Charter Communications to do. As provided in the search warrant affidavit, Grillo stated that [o]n November 4, 2005, I received a fax back from Charter Communications

indicating *the* subscriber for the IP [a]ddress of 24.151.2.100 is Jerome Cariaso of 141 Rocky Mountain [Road], Southbury, Connecticut . . . . As previously explained, given the nature of dynamic IP addresses, it was more than likely that Charter Communications would have come back with *multiple* subscribers for that IP address if it had not limited its search to the subscriber of the IP address on the date and time the incriminating conversation took place." (Emphasis in original; internal quotation marks omitted.)

The defendant argues that his asking for or attempt to obtain pornographic images is not sufficient to establish a finding of probable cause. The defendant relies on *United States* v. *Falso*, 544 F.3d 110 (2d Cir. 2008), cert. denied, 558 U.S. 933, 130 S. Ct. 154, 175 L. Ed. 2d 235 (2009), for his contention that there must be evidence that he possessed an image containing child pornography before probable cause can be established. The defendant's reliance on *Falso*, however, is misplaced. In *Falso*, the United States Court of Appeals for the Second Circuit found that probable cause was lacking where the defendant "appeared" to "have gained or attempted to gain" access to a website that contained approximately eleven images of child pornography. Id., 120–21. Absent any allegation that the defendant in fact accessed the website at issue, the question became whether his eighteen year old conviction involving the sexual abuse of a minor, or some other factor, provided a sufficient basis to believe that the evidence of child pornography would be found in the defendant's home. To the contrary, in the present case, the affidavit contained allegations that a person living at the subject residence,[10] using the screen name "Bi06488," entered

---

[10] "When reviewing an application [for a warrant], courts must also bear in mind that search warrants are directed . . . not at persons, but at property where there is probable cause to believe that instrumentalities or evidence of [a] crime will be found. . . . The affidavit in support of a warrant need not present information that would justify the arrest of the individual in possession of or in control of the property. Nor is it required that the

into an incriminating conversation with "Centralpamaster" to access child pornography and that Charter Communications linked the subscriber of the IP address to the defendant's residence.

Viewing the information in the affidavit in the light most favorable to upholding the court's finding of probable cause, we conclude that the trial court reasonably could have concluded that the affidavit contained sufficient facts to establish probable cause that the defendant's residence contained child pornography. Thus, there was probable cause that the residence and the defendant's computers were related to a substantial chance of criminal activity and would assist the state in the prosecution of the defendant.

B

The defendant next claims that the trial court improperly denied his second motion to suppress filed pursuant to the holding in *Franks* v. *Delaware,* supra, 438 U.S. 154,[11] because information in the affidavit that was

owner be suspected of having committed a crime. Property owned by a person absolutely innocent of any wrongdoing may nevertheless be searched under a valid warrant." (Internal quotation marks omitted.) *State* v. *Buddhu,* 264 Conn. 449, 463–64, 825 A.2d 48 (2003), cert. denied, 541 U.S. 1030, 124 S. Ct. 2106, 158 L. Ed. 2d 712 (2004).

[11] "In *Franks* v. *Delaware,* [supra, 438 U.S. 155–56], the United States Supreme Court held that a defendant may challenge the truthfulness of an affidavit supporting a search warrant, provided the defendant has made a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the truth, was included by the affiant in the warrant affidavit . . . . If this statement is necessary to the finding of probable cause, the [f]ourth [a]mendment requires that a hearing be held at the defendant's request. . . . The court stated also that [t]o mandate an evidentiary hearing, the challenger's attack must be more than conclusory and . . . [t]here must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. . . . Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. . . . The deliberate falsity or reckless disregard whose impeachment is permitted . . . is only that of the affiant, not of any nongovernmental informant. . . . Whether the defendant is entitled to a hearing pursuant to *Franks* . . . is a mixed question of law and fact that [is reviewable] on

inaccurate, or recklessly or intentionally omitted, was material to a determination of probable cause. Specifically, the defendant argues that newly discovered evidence showed that the incriminating conversation actually took place on a date other than the date provided in the affidavit. The defendant further argues that in light of this newly discovered evidence, the state's failure to inform the court that the IP address was dynamic was particularly misleading and established that there was insufficient evidence in the affidavit for a finding of probable cause. We disagree.

The record reflects that newly discovered evidence provided that the incriminating conversation between "Bi06488" and "Centralpamaster" occurred on May 5, 2005, and not on July 1 or August 3, 2005. It was further revealed that July 1, 2005, was the date the conversation was decoded and recorded. It also was revealed that the IP address of 24.151.2.100 was dynamic and not static. Additionally, Charter Communications confirmed that the IP address was leased to Cariaso on July 15, 2005, and also on August 3, 2005. Also, when Charter Communications leased IP addresses, it was possible that the leases could continue for several months in duration.

With regard to the defendant's claim that the affidavit inaccurately suggested that the offending conversation took place on a date other than May 5, 2005, the trial court determined that "it may have been a bit misleading, but it wasn't an inaccuracy. The affidavit indicated that the conversation was decoded on July 1 [2005], not that the conversation occurred on July 1 [2005]. And July 1 [2005] was the date [o]n which . . . the [Pennsylvania] police were able to seize the computer and review the conversation. So, it wasn't inaccurate, though it may have implied that the conversation

appeal." (Internal quotation marks omitted.) *State* v. *Kaminski*, supra, 106 Conn. App. 135.

took place on that date. But even with respect to that information, it's not material, one way or the other, whether the conversation, in fact, took place on May 5 [2005], or July 1 [2005], but I don't find it to be an inaccuracy."

With regard to the defendant's claim that the state's failure to inform the court that the IP address was dynamic and that the IP address was obtained for the date of August 3, 2005, and not May 5, 2005, the trial court determined that it did not "find that the . . . omission of the [dynamic IP address] information was reckless or that it made the warrant misleading under the circumstances of this case. The fact that there was a dynamic IP address here doesn't necessarily mean that the person using the computer on August 3 [2005] was different than the person using the computer on May 5 [2005]. And, in fact, the evidence in this case indicates that they were, in fact, the same person. There was a reasonable inference that they were, in fact, the same person. And that evidence includes the Yahoo [Inc.] document, exhibit I, which indicates that on May 5 [2005] the IP address at issue here, 24.151.2.100, that the user of that IP address was a person using the screen name Bi06488, that that's the same IP address that was used on May 5 [2005] and on August 3, 2005. The Charter Communications documents indicate that. And the Charter Communications documents also indicate that Charter Communications leased its IP address—its dynamic IP addresses for a significant period of time, for months at a time. And so the fact that it was a dynamic IP address doesn't end the discussion here and is not dispositive of anything. I also find telling that . . . the defendant has made no offer of proof that the IP addresses were, in fact—or the user of the IP address on May 5 [2005] was, in fact, different from the user of the IP address on August 3 [2005]. . . . Again, the fact that it was a dynamic IP address,

the fact that they asked for the IP address for a different day than the offending conversation, given the circumstances here, were not material. It would—it's still reasonable, under the circumstances here, given the fact that Charter Communications leased its IP addresses for months at a time, given that the user on May 5 [2005] was the same screen name as the user on August 3 [2005], the fact that it was reasonable for the police to be looking for the computer used by Bi06488—all of those circumstances and facts [make it] reasonable to infer that it was the same user on those two diverse dates, and if the judge had before . . . him the information that the defendant claims was omitted, it would still be reasonable to infer that they were the same person and to find probable cause to search [the residence] and to seize the computer . . . ."

The court determined that the defendant failed to satisfy his burden of proving that the claimed omissions and inaccuracies in the affidavit were intentional or reckless. The court also determined that the claimed omissions and inaccuracies were not material to a finding of probable cause. Accordingly, the issue of "[w]hether the trial court properly found that the facts submitted were enough to support a finding of probable cause is a question of law. . . . The trial court's determination on the issue, therefore, is subject to plenary review on appeal. . . . Because this issue implicates a defendant's constitutional rights . . . we engage in a careful examination of the record to ensure that the court's decision was supported by substantial evidence. . . . Furthermore, [w]e view the information in the affidavit in the light most favorable to upholding the [issuing judge's] determination of probable cause." (Citation omitted; internal quotation marks omitted.) *State* v. *Kaminski*, supra, 106 Conn. App. 127–28.

Viewing the information in the affidavit in the light most favorable to upholding the court's finding of probable cause, we conclude that the trial court reasonably

could have concluded that the defendant failed to make a showing that the claimed omissions and inaccuracies in the affidavit were intentional or reckless and material to a finding of probable cause. Thus, there was probable cause that the subject residence and the defendant's computers were related to a substantial chance of criminal activity and would have assisted in the defendant's conviction.

## II

The defendant finally claims that even if the warrant was validly executed, it did not extend to cover the forensic search of his computers. The defendant did not raise this argument in support of his motions to suppress before the trial court and, therefore, requests review pursuant to *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Upon review, we conclude that the claim fails to satisfy the first prong of *Golding* because the record before us is inadequate.

Under *Golding*, "a defendant can prevail on a claim of constitutional error not preserved at trial only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id.

The record reveals the following additional relevant facts. The warrant application made reference to attachment A, which contained a list of the property to be seized, including, inter alia, computers. Attachment A specifically provided that the seized property would undergo investigative examination that would include "making true copies of the data and examining the contents of [the] files." The warrant signed by the magis-

trate incorporated attachment A. The magistrate, however, did not check a box on the face of the warrant that would have specifically authorized the police to submit the computers to laboratory analysis and examination.

The defendant argues that the unchecked box acts as a limit on the scope of police authority. Specifically, he argues that the warrant did not authorize a forensic search of his computers and, therefore, the police exceeded the scope of the warrant by submitting the computers to forensic examination. The state counters by arguing that the difference between the warrant and the warrant application is due to a scrivener's error. Because the defendant failed to develop this claim at trial, we are left to surmise as to whether the magistrate intended to leave the box blank or inadvertently overlooked it, the former being a matter of constitutional significance. Therefore, because the defendant failed to litigate this claim in the trial court, the record is inadequate for *Golding* review. See *State* v. *Jenkins*, 298 Conn. 209, 222–23, 3 A.3d 806 (2010).

The defendant also argues that we should review his claim as an exercise of our supervisory authority. "Our supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts." *State* v. *Hines*, 243 Conn. 796, 815, 709 A.2d 522 (1998). These powers are reserved for extraordinary circumstances that are not implicated by the present case.[12]

The judgment is affirmed.

In this opinion the other judges concurred.

[12] The defendant further requests that we review his claim as plain error under Practice Book § 60-5. Because the record is inadequate for review under *Golding*, it is also inadequate for consideration under the plain error doctrine. See *Mozell* v. *Commissioner of Correction*, 291 Conn. 62, 69 n.3, 967 A.2d 41 (2009); *Lorthe* v. *Commissioner of Correction*, 103 Conn. App. 662, 668 n.4, 931 A.2d 348, cert. denied, 284 Conn. 939, 937 A.2d 696 (2007).