******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

STATE OF CONNECTICUT *v.* EDWIN LEON, JR.
(AC 37222)

DiPentima, C. J., and Gruendel and Lavery, Js.

*Argued May 13—officially released September 8, 2015*

(Appeal from Superior Court, judicial district of
Hartford, Mullarkey, J.)

*Mark Rademacher*, assistant public defender, for the
appellant (defendant).

*Bruce R. Lockwood*, senior assistant state's attorney,
with whom, on the brief, were *Gail P. Hardy*, state's
attorney, and *Richard J. Rubino*, senior assistant state's
attorney, for the appellee (state).

*Opinion*

DiPENTIMA, C. J. The defendant, Edwin Leon, Jr., appeals from the judgment of conviction, rendered following a jury trial, of manslaughter in the first degree with a firearm in violation of General Statutes §§ 53a-55 (a) (3) and 53a-55a, and carrying a revolver without a permit in violation of General Statutes § 29-35. On appeal, the defendant claims that his counsel's concession of his guilt to the lesser included offenses during closing argument, without an on-the-record consent, violated his federal and state constitutional rights.[1] We affirm the judgment of the trial court.

The following facts, as reasonably could have been found by the jury, are relevant to our resolution of this appeal. The defendant and the victim, Krisann Pouliot, had been in a romantic relationship for three years and lived in the home of Pouliot's mother in East Hartford. On May 19, 2012, after a night of drinking and arguing, the defendant and Pouliot returned home where the defendant fatally shot Pouliot in the neck. The defendant subsequently was arrested and charged in an amended long form information with murder in violation of General Statutes § 53a-54a[2] and carrying a revolver without a permit in violation of § 29-35.

A jury trial began on September 29, 2013, before the court, *Mullarkey, J.* The defendant testified as to the following. On the night of the shooting, the defendant and Pouliot drank a bottle of champagne before they left home for downtown Hartford at about 10 p.m. While downtown, the defendant and Pouliot each consumed approximately four to five alcoholic beverages. The defendant stated that when he went to downtown Hartford, he regularly carried a revolver due to incidents that had taken place there previously. The defendant did not have a permit to carry a revolver.[3] At some point while at various clubs in Hartford, the defendant and Pouliot began to argue about the attention that the defendant was paying to other women. Later that evening, the defendant and Pouliot drove home, where the defendant took the gun from the car and brought it upstairs. In their shared bedroom, the defendant and Pouliot continued to argue with escalating intensity. At some point, the defendant pushed Pouliot onto the bed, placed his left hand around her neck, and held his gun to her neck with his right hand. The defendant stated that he pulled out his gun to "calm [Pouliot] down." With his left hand still around Pouliot's neck, the gun discharged and the bullet entered Pouliot's neck and exited, severing a finger on the defendant's left hand.

According to the defendant, after shooting Pouliot, he held her for a few minutes as she gasped for breath. The defendant then picked up the gun, put on a sweatshirt, and left the premises without reporting the incident to anyone. The defendant walked to his moth-

er's house, which took him approximately forty-five minutes, during which time he did not summon help for Pouliot or alert anyone to the shooting. The defendant testified that he never intended to shoot the gun and did not pull the trigger intentionally.[4] After arriving at his mother's home, the defendant told his mother, brother, and the mother of his child what had taken place, at which point the police were called. Matthew Martinelli, an East Hartford firefighter paramedic, testified that upon his arrival, it was immediately clear that Pouliot was not breathing and, after failing to detect a heartbeat, he determined that she was dead.[5]

During defense counsel's closing argument to the jury, he stated: "I suggest again that this was not intentional, and the circumstances surrounding this, I suggest, indicate that it wasn't intentional. I think he panicked after this happened. He should have gotten help immediately, but did not lawyer up, did not run, I mean, not run away, but he ran away from the scene, but he didn't try to run, he didn't flee the state, didn't do any of that, and told everybody who asked what happened. Stupid, maybe reckless, definitely stupid, in fact it's so stupid that I have trouble getting—wrapping my mind around that it was intentional. It was, you just—and the hammer back, carrying a weapon with the hammer back, he had no training, you heard him testify to that, no firearms training, obviously, because the first thing you're taught is, you don't do that, you don't carry a weapon with a round in the chamber, even.

"I'm asking that you consider when you are deliberating that there is a life that was lost and my client is responsible in some way, there's no question about that. The question is, responsible for what of the charges that you'll hear when the judge reads the charge. *I suggest that this was an accident. It may have been reckless behavior, but it was not intentional. I'm suggesting that he certainly should be convicted on the gun and on criminally negligent homicide*; there is a life lost, but again, in my mind this just does not appear, does not sound like an intentional shooting." (Emphasis added.)

The court instructed the jury as to murder in violation of § 53a-54a, and the lesser included charges of manslaughter in the first degree with a firearm (intentional) in violation of § 53a-55 (a) (1), manslaughter in the first degree with a firearm (reckless indifference) in violation of § 53a-55 (a) (3), and criminally negligent homicide in violation of General Statutes § 53a-58. Following jury deliberations, the defendant was found guilty of manslaughter in the first degree with a firearm in violation of §§ 53a-55 (a) (3)[6] and 53a-55a, and carrying a revolver without a permit in violation of § 29-35. The defendant was sentenced to a total effective term of thirty-one years imprisonment.

On appeal, the defendant claims that his counsel's

decision to concede his client's guilt to the lesser included offenses during closing argument, without the defendant's consent appearing on the record, violated the defendant's right to plead not guilty, his right to testify, his right to have the state prove him guilty beyond a reasonable doubt and, finally, his right to have the effective assistance of counsel. In essence, the defendant argues that his counsel's concession resulted in the ineffective assistance of counsel by abridging the above-mentioned rights.

We note first that the claims in this appeal are predicated upon the defendant's overarching claim of his counsel's ineffective assistance. Our Supreme Court has held that, "[a]lmost without exception, we have required that a claim of ineffective assistance of counsel must be raised by way of habeas corpus, rather than by direct appeal, because of the need for a full evidentiary record for such [a] claim. . . . *Absent the evidentiary hearing available in the collateral action, review in this court of the ineffective assistance claim is at best difficult and sometimes impossible.* The evidentiary hearing provides the trial court with the evidence which is often necessary to evaluate the competency of the defense and the harmfulness of any incompetency. . . . [O]n the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal . . . we have limited our review to situations in which the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development." (Citation omitted; emphasis in original; footnote omitted; internal quotation marks omitted.) *State* v. *Greene*, 274 Conn. 134, 151–52, 874 A.2d 750 (2005), cert. denied, 548 U.S. 926, 126 S. Ct, 2981, 165 L. Ed. 2d 988 (2006); see also *State* v. *Jose V.*, 157 Conn. App. 393, 404–405,     A.3d    , cert. denied, 317 Conn. 916,     A.3d     (2015). Furthermore, "[t]he transcript of the proceedings in the trial court allows us to examine the *actions* of defense counsel but not the underlying *reasons* for his actions. . . . Our role . . . is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. Without a hearing in which the reasons for counsel's decision may be elicited, any decision of ours . . . would be entirely speculative." (Citation omitted; emphasis in original; internal quotation marks omitted.) *State* v. *Greene*, supra, 152.

The defendant argues that this case presents a rare occasion in which review on direct appeal is appropriate. The defendant cites four reasons that his claim should be reviewed: (1) the waiver of basic trial rights must appear on the record, (2) he was denied his right to plead not guilty and have the state prove each element of the offense beyond a reasonable doubt, (3) his counsel's argument undermined his right to testify, and (4) his counsel's concession to his being guilty of lesser

included offenses undermined the adversary structure of the trial process and denied him his right to effective assistance of counsel under *United States* v. *Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). Further, he argues that such a concession is prejudicial under *Strickland* v. *Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). The defendant also contends that this unpreserved claim is reviewable under *State* v. *Golding*, 213 Conn. 233, 567 A.2d 823 (1989), or, in the alternative, plain error. See Practice Book § 60-5. The defendant further argues that this court should exercise its supervisory powers to reverse his conviction.

In opposition, the state disagrees and directs our attention to the reasoning of our Supreme Court, where it has stated that "[o]n the rare occasions that we have addressed an ineffective assistance of counsel claim on direct appeal, we have limited our review to allegations that the defendant's sixth amendment rights had been jeopardized by the actions of the trial court, rather than by those of his counsel." (Emphasis omitted.) *State* v. *Crespo*, 246 Conn. 665, 688, 718 A.2d 925 (1998), cert. denied, 525 U.S. 1125, 119 S. Ct. 911, 142 L. Ed. 2d 909 (1999). Furthermore, "[w]e have addressed such claims, moreover, only where the record of the trial court's allegedly improper action was adequate for review or the issue presented was a question of law, not one of fact requiring further evidentiary development." Id. No such improper actions by the trial court are alleged here.

Our Supreme Court has determined that when a claim is unpreserved, as in this case, "a defendant can prevail on a claim of constitutional error not preserved at trial only if *all* of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation . . . exists and . . . deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt. In the absence of any one of these conditions, the defendant's claim will fail." (Emphasis in original; footnote omitted.) *State* v. *Golding*, supra, 213 Conn. 239–40; see *In re Yasiel R.*, 317 Conn. 773, 781, A.3d (2015) (modifying third prong).

In relation to his claims, the defendant argues that the record is adequate for review and does not require an additional habeas corpus record because the transcripts reveal counsel's concession of guilt, the conflicting goals of the defendant and his counsel, and the absence of any on-the-record consent by the defendant to his counsel's strategy. Therefore, he argues that a hearing would "serve no purpose." The state responds that although the defendant may have a claim before

a habeas court, the present record is inadequate for appellate review, and the defendant does not confine his claim to errors made by the court, as required by *Crespo* for ineffective assistance of counsel claims on direct appeal. We agree with the state and conclude that each of the defendant's claims, while cloaked in constitutional language, is predicated upon an ineffective assistance of counsel claim requiring a full evidentiary record by way of habeas corpus.

In *State* v. *Jose V.*, supra, 157 Conn. App. 405,[7] recently decided by this court, the defendant claimed that "[t]his is one of the exceedingly rare cases where this court may review the effectiveness of counsel in a direct appeal, because defense counsel admitted [the claimed error] on the record . . . . This was not a tactical choice based on the exercise of professional judgment. . . . [T]herefore, the defendant's claims may be resolved as a matter of law upon review of the existing record, without need for further evidentiary development in a habeas corpus trial." (Internal quotation marks omitted.) This court disagreed and held that "[a]lthough the record may reflect the actions of defense counsel during the sentencing proceeding, we do not know all of the reasons for those actions. . . . The record is silent as to the advice that may have been given by defense counsel that the defendant chose not to follow. All of the relevant circumstances are not known. Our role . . . is not to guess at possibilities, but to review claims based on a complete factual record developed by a trial court. Without a hearing in which the reasons for counsel's decision may be elicited, any decision of ours . . . would be entirely speculative. . . . Accordingly, we decline to review the defendant's claim that he was deprived of effective assistance of counsel." (Citation omitted; internal quotation marks omitted.) Id., 405–406.

Here, we are presented with a similar scenario, in that there is an incomplete factual record and the defendant seeks to bypass habeas review.[8] There is an insufficient evidentiary record for the defendant's ineffective assistance of counsel claim and, as in *Jose V.*, we do not know the underlying reasons for defense counsel's decision-making or what tactical decisions were made on the basis of conversations between defense counsel and the defendant. Furthermore, the record in the present case is similarly devoid of any indication as to whether there were any discussions with the state regarding the lesser included charges. Absent testimony from defense counsel and the defendant, this court could only speculate as to all of the strategic considerations and conversations between counsel and the defendant, which may have induced counsel to act as he did during closing argument. In addition, there is no claim that the trial court erred by violating the defendant's sixth amendment right to effective assistance of counsel. See *State* v. *Crespo*, supra, 246 Conn. 688. The defendant's claim

thus fails under the first prong of *Golding*.[9]

The judgment is affirmed.

In this opinion the other judges concurred.

[1] We note that the defendant challenges only the manslaughter conviction in this appeal.

Specifically, the defendant claims that defense counsel violated the defendant's right to plead not guilty, his right to testify, his right to have the state prove him guilty beyond a reasonable doubt and, finally, his right to the effective assistance of counsel.

[2] General Statutes § 53a-54a (a) provides: "A person is guilty of murder when, with intent to cause the death of another person, he causes the death of such person or of a third person or causes a suicide by force, duress or deception; except that in any prosecution under this subsection, it shall be an affirmative defense that the defendant committed the proscribed act or acts under the influence of extreme emotional disturbance for which there was a reasonable explanation or excuse, the reasonableness of which is to be determined from the viewpoint of a person in the defendant's situation under the circumstances as the defendant believed them to be, provided nothing contained in this subsection shall constitute a defense to a prosecution for, or preclude a conviction of, manslaughter in the first degree or any other crime."

[3] At trial, the parties stipulated that the defendant "did not have a permit, issued by the state of Connecticut and the town of East Hartford . . . to carry a revolver on May 19, 2012."

[4] The following exchange occurred between defense counsel and the defendant regarding the discharge of the gun:

"Q. Did you know that was going to happen?

"A. No. I did not.

"Q. Did you know the gun was going to go off?

"A. No. I did not.

"Q. Did you intentionally pull that trigger?

"A. No. I did not."

[5] Pouliot died as a result of the gunshot wound to her neck, which severed her external carotid artery.

[6] The defendant was acquitted of the charge of murder in count one.

[7] In *Jose V.*, the defendant appealed from the judgment of conviction, rendered after a jury trial, of sexual assault in the fourth degree in violation of General Statutes § 53a-73a (a) (1) (A) and risk of injury to a child in violation of General Statutes § 53-21 (a) (2). On appeal, in relevant part, the defendant claimed that the court's consideration during the sentencing proceeding of a letter he had written to the state's attorney, which contained incriminating statements, deprived him of his right to the effective assistance of counsel. *State* v. *Jose V.*, supra, 157 Conn. App. 403–406. After delivering the letter to the state's attorney, defense counsel had *the contents of the letter translated from Spanish to English on the day of sentencing*. The court learned of its contents through the state's attorney's sentencing remarks. Id., 397–400.

[8] The defendant claims that the waiver of basic trial rights must occur on the record because the concession resembled the functional equivalent of a guilty plea and, therefore, must be reviewed in this appeal. He argues that "[o]nly an express on-the-record waiver made personally by the defendant will suffice." For this proposition, the defendant cites *United States* v. *Holman*, 314 F.3d 837, 843 (7th Cir. 2002), cert. denied, 538 U.S. 1058, 123 S. Ct. 2238, 155 L. Ed. 2d 1108 (2003), however, we note that the United States Court of Appeals for the Seventh Circuit stated that, "[w]e agree with the Sixth Circuit that obtaining a defendant's consent on the record in open court is the *preferred method of forestalling any issues of consent that could come up later on appeal* . . . . We also agree that *other methods*, such as an affidavit from the defendant describing his discussions with his attorney and consent to the strategy, *could work just as well*." (Citations omitted; emphasis added.) There is no indication that the Seventh Circuit intended to impose a new requirement that all waivers must be on the record in open court.

[9] Additionally, in his brief, the defendant states that the claim is reviewable under the plain error doctrine. We have previously held that "[b]ecause the record is inadequate for review under *Golding*, it is also inadequate for consideration under the plain error doctrine." *State* v. *Shields*, 124 Conn. App. 584, 601 n.12, 5 A.3d 984 (2010), aff'd, 308 Conn. 678, 69 A.3d 293 (2013), cert. denied,      U.S.     , 134 S. Ct. 1040, 188 L. Ed. 2d 123 (2014). The defendant's claim therefore, also fails under the plain error doctrine.

Finally, the defendant's claim does not require a reversal by invocation of the court's supervisory powers. "[O]ur supervisory authority . . . is not a form of free-floating justice, untethered to legal principle. . . . [T]he integrity of the judicial system serves as a unifying principle behind the seemingly disparate use of our supervisory powers. . . . [O]ur supervisory powers are invoked only in the rare circumstance where [the] traditional protections are inadequate to ensure the fair and just administration of the courts . . . ." (Internal quotation marks omitted.) *State* v. *Kuncik*, 141 Conn. App. 288, 292–93, 61 A.3d 561, cert. denied, 308 Conn. 936, 66 A.3d 498 (2013).