EDWARD KRAMER *v.* COMMISSIONER
OF CORRECTION ET AL.
(AC 34257)

DiPentima, C. J., and Espinosa and Sheldon, Js.

Argued October 11—officially released December 11, 2012

*Susan M. Hankins*, for the appellant (petitioner).

*Steven R. Strom*, assistant attorney general, with whom, on the brief, were *George Jepsen*, attorney general, and *Nora R. Dannehy*, deputy attorney general, for the appellees (respondents).

SHELDON, J. In this case, the petitioner, Edward Kramer, appeals from the dismissal of his petition for a writ of habeas corpus challenging his proposed extradition to the state of Georgia, pursuant to a governor's warrant issued by the governor of this state upon the demand and requisition of the governor of Georgia, to face further prosecution on charges of sexual molestation allegedly pending against him in that state since August, 2000.[1] The petitioner claims that the habeas court erred in dismissing his petition based upon findings that he had failed to prove either: (1) that the requisition documents upon which his extradition was demanded by the governor of Georgia are insufficient on their face to establish that he was ever substantially charged with a crime in Georgia; or (2) that, regardless of the facial sufficiency of the requisition documents, he is not a fugitive from Georgia because any once-pending charges against him in that state have effectively been dismissed. For the reasons set forth in the well reasoned opinion of the habeas court, which we quote with approval and discuss in part herein, we reject the petitioner's challenges, and thus affirm the habeas court's judgment dismissing his application for a writ of habeas corpus.

Under the extradition clause of the United States constitution, any state may require any other state to deliver up any person deemed to be a fugitive from justice from the demanding state. U.S. Const., art. IV, § 2, cl. 2. The procedures for interstate extraditions are set forth in the Uniform Criminal Extradition Act (act), General Statutes § 54-157 et seq., which implements the mandate of the extradition clause of the United States

---

[1] The petitioner named as respondents Peter Murphy, warden of the Mac-Dougall-Walker Correctional Institution, and state police Detective David Gutierrez.

constitution. See *Michigan* v. *Doran*, 439 U.S. 282, 286–87, 99 S. Ct. 530, 58 L. Ed. 2d 521 (1978). Under the act, the governor of this state has a mandatory duty to comply with a demand by the executive authority of another state for the extradition of any person who, having been charged with a crime in the demanding state, is a fugitive from justice from that state and is found in this state. A person arrested on the charge of being a fugitive from justice from another state can choose either to waive extradition or to contest it. By contesting extradition, an alleged fugitive requires the state to release him from its custody unless a governor's warrant is issued within the time allowed by law. If a governor's warrant is duly issued, the state can continue to hold the alleged fugitive until such time as he is extradited, subject to his right to contest the lawfulness of his proposed extradition by seeking release on a writ of habeas corpus.[2]

"Once the governor has granted extradition, a court considering release on habeas corpus can do no more than decide (a) whether the extradition documents on their face are in order; (b) whether the petitioner has been charged with a crime in the demanding state; (c) whether the petitioner is the person named in the request for extradition; and (d) whether the petitioner is a fugitive." Id., 289. "The issuance of a governor's warrant constitutes prima facie evidence that the person named therein is a fugitive, and introduction of the warrant into evidence shifts the burden of showing the contrary to the petitioner contesting the legality of his arrest." *Barrila* v. *Blake*, 190 Conn. 631, 635, 461 A.2d 1375 (1983). The petitioner must establish the illegality of his arrest as a fugitive beyond a reasonable doubt. Id.

In reviewing a judgment dismissing a petition for a writ of habeas corpus, "[t]he habeas court is afforded

---

[2] See General Statutes § 54-166.

broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

The following undisputed facts and procedural history, as found by the habeas court, are relevant to our examination of the issues presented in this appeal. "On August 25, 2000, Judge Patricia Holman, Magistrate Court, Gwinnett County, Georgia, signed Criminal Arrest Warrant No. 00 W05780, finding 'sufficient cause made known to me in the above affidavit . . . and other sworn testimony . . . to arrest the Accused . . . .' The affidavit states under oath that the petitioner 'did perform an indecent act upon a child under the age of sixteen (16) years, the victim, by placing his mouth on the penis of the victim . . . and performing an act of sodomy on the [thirteen] 13 year old victim, in violation of Georgia law.'

"[Because the] petitioner, upon his arrest pursuant to the August 25, 2000 warrant, did not 'bond out,' he was entitled under Georgia procedure to a 'commitment hearing' before another magistrate, who received evidence that was subject to cross-examination and made a finding of probable cause to bind the case over to the Superior Court. In Superior Court, a grand jury was convened, after two other victims surfaced, and returned the indictment charging [the] petitioner in six

[felony] counts [specifically, two counts of aggravated child molestation and four counts of child molestation].

"As of May, 2008, [the] petitioner was at liberty in Georgia on a $75,000 surety bond, subject to electronic monitoring. The terms of [the] petitioner's release on bond were modified under the consent order of May 21, 2008; under that order, [the] petitioner's bond remained at $75,000, with surety, he was removed from electronic monitoring, and the bondsman was authorized to return a real estate deed to [the] petitioner so that the realty could be sold or rented. In lieu of electronic monitoring, the order subjected [the] petitioner to specifically detailed reporting requirements regarding his whereabouts; [the] petitioner was required to report directly (telephonically) to the district attorney or his designee. The order specifically stated as a condition of the release that [the] petitioner was to have no unsupervised contact with any person under the age of sixteen years. Subject to the reporting requirements, [the] petitioner was granted permission under the order 'to travel between the states of New York, New Jersey and Georgia as the needs of his mother's medical attention and his own shall dictate.' Under the modification order, and subject to the reporting requirements, [the] petitioner was permitted to leave his residence with proper notice to the district attorney or his designee and 'get other accommodations, either closer to Shepard Hospital when he is receiving treatment at Shepard, or in New York City next to Sloan Kettering during the period of time his mother is under care at that institution, or in New Jersey, if he is being given medical attention there . . . .' The order also provided that [the] petitioner 'shall appear in the Gwinnett County Superior Court at any time set by [that] Court or the District Attorney.' . . .

"On April 22, 2009, a 'status hearing' was held before a judge of the Georgia Superior Court concerning 'what

to do with regard to the trial of [the petitioner's] case.' [The] [p]etitioner was present with counsel, who, just prior to the hearing, had filed a motion for a continuance with respect to a scheduled trial date. A lengthy discourse ensued between the court and those present (petitioner's counsel, petitioner, and the district attorney). The transcript of that hearing . . . reveals that the court was thoroughly familiar with the long procedural history of the case and [the] petitioner's difficult medical condition. . . . The central issue concerned his physical ability to participate in his trial, not mental competency to stand trial. In view of [the] petitioner's medical state, the court had made, or proposed, a number of accommodations respecting trial scheduling, reduced hours of trial time, procurement of medical equipment, etc. [The] [p]etitioner repeatedly stated that he wanted a trial, but despite a number of continuing inquiries by the court, he remained uncertain as to his ability to remain attentive [during trial], even with the suggested accommodations in place.

"Following the April 22, 2009 hearing, the Georgia court entered an order providing, in part, as follows: 'The court being cognizant of the [petitioner's] expressed desire for a trial on these charges directly inquired as to whether [the petitioner] was prepared to go forward with the accommodations which the court was prepared to make for his medical conditions. [The petitioner] directly informed the Court that he was not able to proceed under these circumstances. THEREFORE IT IS HEREBY ORDERED that the . . . case be continued at the request of [the petitioner] and until further order of this Court. IT IS FURTHER ORDERED that . . . the case shall not be scheduled for trial until such time that [the petitioner] files an appropriate motion and presents convincing evidence to this court that he is physically and mentally able to effectively

assist counsel and effectively participate in a trial under the accommodations set forth by the court.'"

On September 13, 2011, the petitioner was charged in Connecticut with risk of injury to a child in violation of General Statutes § 53-21. On the next day, the petitioner was arraigned on that charge and a $50,000 bond was set in that file. On that same day, the Georgia district attorney, upon learning of the charges against the petitioner in Connecticut, "filed an 'Emergency Motion to Revoke Bond,' referencing a violation of the condition of release contained in the May 21, 2008 bond modification order: [specifically, that the petitioner have] 'no unsupervised contact with any person under the age of sixteen.' On September 14, 2011, the Georgia Superior Court ordered that [the] petitioner immediately be taken into custody and transported to the Gwinnett County jail to be held [pending] a hearing on the district attorney's motion." Consequently, on September 21, 2011, a bench warrant was issued in Georgia. "On September 28, 2011, the petitioner was arrested [in Connecticut] and charged with being a fugitive from justice [from Georgia] in violation of General Statutes § 54-169 . . . and . . . a bond of $100,000 [was] set . . . on that file. On October 7, 2011, [the petitioner was released from custody on a surety bond]. On October 27, 2011, [the] . . . petitioner . . . was served with the governor's warrant and [was arrested]. [He remains] in custody without bond [pursuant to] the Connecticut rendition warrant."

On November 22, 2011, the petitioner filed this application for release on habeas corpus, challenging the legality of his arrest as a fugitive under the governor's warrant. He based his challenge to the legality of his fugitivity arrest under the governor's warrant on the following grounds: (1) that the requisition documents upon which his extradition was demanded by the governor of Georgia are insufficient on their face to establish

that he was ever substantially charged with a crime in Georgia; and (2) that, regardless of the facial sufficiency of the requisition documents, he is not a fugitive from Georgia because any once-pending charges against him in that state have effectively been dismissed.[3] The case was heard before the habeas court on December 21, 2011. By way of a written memorandum of decision filed on January 17, 2012, the habeas court dismissed the petitioner's application for a writ of habeas corpus.

The petitioner argued that the requisition documents provided by the demanding state of Georgia are not facially in order because they fail to establish that he is substantially charged with a Georgia crime. That argument, in turn, is based principally upon the fact that his original arrest warrant, as signed and approved by Judge Holman of the Magistrate Court for Gwinnett County, Georgia, on August 25, 2000, was based expressly upon a finding of "sufficient cause," rather than probable cause, to believe that he had committed a crime or crimes in that state. The habeas court rejected this claim based upon the testimony of Daniel J. Porter, the district attorney of Gwinnett County, Georgia. Porter testified that Georgia's arrest warrant statute, Ga. Code Ann. § 17-4-40, permits the issuance of an arrest warrant only upon a finding of probable cause. He further testified, however, that under Georgia law, "sufficient cause is . . . synonymous with probable cause." The court thus reasoned that "the wording of the arrest warrant statute ('issue . . . based on probable cause'), together with the content of the supporting affidavit . . . having been 'incorporated by reference' in the magistrate's finding of 'sufficient cause,' support [the] [commissioner of correction's] contention (and [Porter's] testimony) that [the] petitioner's arrest

---

[3] The petitioner conceded to the habeas court that he is the person named in the request for extradition and thus did not challenge the third requirement set forth in *Michigan* v. *Doran,* supra, 439 U.S. 289.

by warrant was grounded on a determination of 'probable cause.' " On this clearly stated basis alone, the habeas court properly rejected the petitioner's first challenge to the legality of his arrest under the governor's warrant.

The petitioner based his second challenge to the legality of his fugitivity arrest under the governor's warrant—the claim that he is not a fugitive from Georgia because all once-pending charges against him in that state have been effectively dismissed—upon the contention that the demanding state of Georgia has surrendered to him all control over the future prosecution of this case by ordering the indefinite continuation of his trial until such time as he moves the court to commence the trial based upon proof that he will be physically capable of getting through it despite his difficult medical condition. The habeas court rejected this claim, on the basis of the following well-founded assessment of the procedural posture of the petitioner's Georgia prosecution, in stating: "[T]here is no indication, or even a suggestion, that the Georgia district attorney's office ever expressed an intention not to proceed with the prosecution of the petitioner. A fair reading of the transcript of the April 22, 2009 hearing indicates that, at the time, the district attorney was prepared for trial, had spoken to witnesses, and was intending to move the prosecution through to conclusion. The charges have remained pending since the arrest and indictment and, according to the testimony before this court, the district attorney now intends to continue his efforts to get the case promptly tried. Thus, the [indefinite continuance] order entered [on] April 22, 2009, does not alter or vitiate [the petitioner's] present status as a fugitive from justice." The court then cited to controlling Connecticut case law concerning the meaning of fugitivity, which provides that "[t]o be regarded as a fugitive from justice it is not necessary one shall have

left the State in which the crime is alleged to have been committed for the very purpose of avoiding prosecution, but simply that, having committed there an act which by the law of the State constitutes a crime, he afterwards has departed from its jurisdiction, and when sought to be prosecuted is found within the territory of another State." (Internal quotation marks omitted.) *Clark* v. *Commissioner of Correction*, 281 Conn. 380, 393–94, 917 A.2d 1 (2007). Following *Clark*, the court concluded that the petitioner is indeed a fugitive from Georgia because he "is charged with crimes in Georgia, he has left Georgia, the Georgia authorities wish to prosecute him on the pending charges, and he is in Connecticut." The court thus dismissed the petitioner's application for a writ of habeas corpus. This appeal followed.

We have carefully examined the record on appeal and considered the briefs and arguments of the parties. On that basis, we conclude that there is no error in the habeas court's above-described determinations that the extradition documents are in order and that the petitioner is a fugitive from Georgia.[4] The habeas court thus properly held that the requirements set forth in *Michigan* v. *Doran*, supra, 439 U.S. 289, had been satisfied and properly dismissed the petitioner's application for a writ of habeas corpus.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[4] At oral argument before this court, the petitioner withdrew his claim that he had not been charged with a crime in Georgia.