17-2467-cv
*Kramer v. Vitti*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING TO A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

**At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 14th day of November, two thousand eighteen.**

PRESENT:
        ROBERT A. KATZMANN,
           *Chief Judge*,
        AMALYA L. KEARSE,
        DENNY CHIN,
           *Circuit Judges*.

---

EDWARD KRAMER,

        *Plaintiff-Appellant*,

      v.                             No. 17-2467-cv

ANTONIO VITTI, STEPHEN STAUROVSKY,

        *Defendants-Appellees*,

PETER FEARON,

        *Defendant*.

---

For Plaintiff-Appellant:              WILLIAM S. PALMIERI, Law Offices of William S. Palmieri, LLC, New Haven, CT.

For Defendants-Appellees:  JAMES N. TALLBERG (Patrick D. Allen, *on the brief*), Karsten & Tallberg, LLC, Rocky Hill, CT.

Appeal from a judgment of the United States District Court for the District of Connecticut (Underhill, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-appellant Edward Kramer appeals from a judgment of the United States District Court for the District of Connecticut (Underhill, *J.*) entered in favor of defendants-appellees Antonio Vitti and Stephen Staurovsky (the "defendants") on July 14, 2017, granting summary judgment dismissing Kramer's claim of malicious prosecution brought under 42 U.S.C. § 1983. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

In 2003, Kramer was indicted on four counts of child molestation and two counts of aggravated child molestation by a Georgia grand jury. Subsequently, on May 21, 2008, the judge presiding over that case modified the terms of Kramer's pretrial release to permit him to travel to New York and New Jersey to receive medical care. The modified bond order prohibited Kramer, *inter alia*, from having "unsupervised contact with anyone under the age of sixteen (16) years" and required Kramer to provide information regarding his whereabouts to the Georgia district attorney's office whenever he traveled outside the state of Georgia. Special App. 61.

In 2011, the Georgia district attorney Daniel Porter discovered that Kramer was staying in a motel room in Connecticut alone with a fourteen-year-old child actor named Trevor. Porter contacted the authorities in Connecticut and spoke with, among others, Antonio Vitti, a detective in the Milford Police Department ("MPD"). Porter provided Vitti with a copy of the indictment

2

in the child molestation case and the modified bond order prohibiting Kramer from having unsupervised contact with minors. Thereafter, Vitti contacted Krystal Phillips, a woman who was working with Trevor on a film. Phillips stated that Trevor had been staying with his mother, but that his mother had left, saying that Trevor was now in the sole custody of Kramer as his guardian. Phillips then provided a signed, sworn, written statement recounting that she had asked a colleague, Nick Vallas, to check on Trevor to make sure he was okay, and that Vallas had found Trevor wearing only a towel alone in the room with Kramer. Phillips also stated that Kramer had engaged in behavior with respect to Trevor that was "weird and creepy," such as by attempting to follow Trevor into a changing room. Special App. 18, 52-53. Subsequently, Vallas gave the MPD a voluntary sworn witness statement noting, among other things, that he "wasn't comfortable leaving [Trevor] in the room with" Kramer. *Id.* at 58.

Thereafter, non-party MPD officers located Kramer and the boy alone in the motel room, confirmed the boy's date of birth and Kramer's identity, and placed Kramer under arrest. At MPD headquarters, Kramer was booked and processed for Risk of Injury in violation of § 53-21 of the Connecticut General Statutes. Vitti and Stephen Staurovsky, another detective in the MPD, then interviewed Trevor, who denied any type of sexual activity involving Kramer or any nude photographs. Staurovsky then applied for a warrant to search Kramer's computers, cameras, and other electronic equipment. Staurovsky's application included details about the MPD's investigation, the sworn statements of Vallas and Phillips, the MPD's arrest of Kramer, and the MPD's interview with Trevor and his mother. Staurovsky's affidavit noted, *inter alia*, that Trevor had told the MPD that Kramer was helping him "obtain acting opportunities" and that Kramer had "taken photos and videos of him to use them to send to other promoters in order to get acting positions." App. 220. It also noted that when Georgia authorities had previously

3

searched Kramer's residence in Georgia, "they found hundreds of photographs of juvenile boys in different stages of dress." *Id.* Although the warrant was issued, the search revealed no unlawful materials.

An Information charging Kramer with Risk of Injury was filed in Milford Superior Court on September 14, 2011, the day after his arrest. A disposition hearing was held on March 14, 2013, and the prosecutor entered a *nolle prosequi*. In December 2013, Kramer pled guilty to felony child molestation in Georgia. Kramer is now a registered sex offender.

We review the district court's grant of summary judgment *de novo*. *See Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224 (2d Cir. 1994). At the summary judgment stage, the burden is on the moving party to establish that there are no genuine issues of material fact in dispute and that the moving party is entitled to judgment as a matter of law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986).

The parties agree that, to prevail against defendants, Kramer must prove that "(1) the defendant[s] initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant[s] acted without probable cause; and (4) the defendant[s] acted with malice, primarily for a purpose other than that of bringing an offender to justice." *Bhatia v. Debek*, 287 Conn. 397, 404 (2008) (internal quotation marks omitted).

The district court here found that Kramer had failed, among other things, to adduce evidence sufficient to prove that defendants lacked probable cause for participating in initiating or pursuing the prosecution of Kramer following his arrest and the search of his devices. Under both federal and Connecticut law, probable cause to prosecute exists where the officers have "knowledge of facts sufficient to justify a reasonable person in the belief that he has reasonable

4

grounds for prosecuting an action." *Id.* at 410 (internal quotation marks omitted); *see also*

*Lombardi v. Myers*, No. 3:14 Civ. 1687, 2016 WL 4445939, at *4 (D. Conn. Aug. 18, 2016).

Probable cause is "a fluid concept—turning on the assessment of probabilities in particular

factual contexts—not readily, or even usefully, reduced to a neat set of legal rules." *Illinois v.*

*Gates*, 462 U.S. 213, 232 (1983). "While probable cause requires more than a mere suspicion of

wrongdoing, its focus is on probabilities, not hard certainties." *Walczyk v. Rio*, 496 F.3d 139, 156

(2d Cir. 2007) (internal citation and quotation marks omitted). "[W]here there is no dispute as to

what facts were relied on to demonstrate probable cause, the existence of probable cause is a

question of law for the court." *Id.* at 157.

Here, Kramer was arrested and charged with violating § 53-21 of the Connecticut

General Statutes. A person is liable under this section who, *inter alia*, "unlawfully causes or

permits any child under the age of sixteen years to be placed in such a situation that the . . .

morals of such child are likely to be impaired, or does any act likely to impair the health or

morals of any such child." Conn. Gen. Stat. § 53-21(a)(1). "[T]he general purpose of § 53–21 is

to protect the physical and psychological well-being of children from the potentially harmful

conduct of adults." *State v. Kaminski*, 106 Conn. App. 114, 126 (2008) (internal quotation marks

omitted). "This purpose includes 'situation' language . . . and it does not require actual injury to

the child." *Id.*

The district court found, as a matter of law, that there was sufficient probable cause to

prosecute Kramer for violating § 53-21(a). Specifically, the district court identified the MPD's

knowledge that Kramer was facing "child molestation charges in Georgia, that he was, as a result

of those charges, prohibited from having any unsupervised contact with children under the age of

16, that he violated that condition by being in a hotel room with a 14-year-old, and that witnesses

5

had informed the [MPD] that he was acting in a creepy and weird manner toward the child and that they were uncomfortable about what was going on." App. 52-53.

On appeal, Kramer argues that (1) "no reasonable police officer" would have relied on the information provided by Porter regarding the terms of Kramer's Georgia pretrial release, which information, Kramer maintains, was false and misleading, and (2) defendants made "no efforts whatsoever to determine the reliability, credibility, or believability of" Phillips, one of the two witnesses in the case. Appellant's Br. ("Br.") at 18-19. According to Kramer, defendants arrested him at the request of Porter, *id.* at 18, and instigated his prosecution even though they had "actual knowledge that [Trevor] was fine, and nothing was wrong," *id.* at 20.

Kramer's arguments are unavailing. First, it cannot be genuinely disputed that Kramer violated the terms of his Georgia pretrial release and that, accordingly, the information provided by Porter and relied on by the defendants was true and accurate in all relevant respects. Although Kramer continues to argue that, by the time of his arrest, his criminal case in Georgia "had been closed as a matter of law after the expiration of two terms, having had no action taken by the Georgia Court on [Kramer's] request for hearing," *id.* at 3, the Connecticut courts determined otherwise, *see Kramer v. Comm'r of Corr.*, 56 A.3d 956, 961-62 (Conn. App. Ct. 2012), and Kramer himself ultimately pled guilty to child molestation pursuant to a plea deal in the Georgia case. Accordingly, the district court was correct to conclude that the modified Georgia bond order was in effect at the time Kramer's prosecution was initiated.

Second, it is abjectly false that defendants "made no efforts" to assess the reliability, credibility, or believability of Phillips. It is undisputed that the MPD spoke directly with Phillips and took her sworn statement. It is also undisputed that Phillips indicated in her statement that she had heard Kramer make statements and engage in behavior with respect to Trevor which she

6

deemed "weird and creepy." *See* Pl. Local Rule 56.1 St. ¶¶ 13-16, D. Ct. Dkt. 54 (admitting these factual allegations). And, while defendants were aware that Trevor had told Vallas that he was "fine," it is undisputed that Trevor was seen in the hotel room wearing only a towel, alone with Kramer.

Kramer further argues that defendants improperly applied for a warrant to search his electronic equipment for nude pictures of children despite actual knowledge that no charge of child pornography existed in the Georgia case. But while defendants may have been aware that no child pornography charges were made against Kramer in Georgia, Kramer does not contest that Porter had informed defendants that pictures of children had been found in a search of Kramer's residence, including at least 60 "photographs of young boys." *State v. Kramer*, 580 S.E.2d 314, 316 (Ga. App. 2003).

According to Kramer, defendants omitted various pieces of material information from the warrant affidavit (the "warrant"). But none of the pieces of information Kramer identifies in his brief are material.

First, although Kramer argues that the warrant failed to note that he "had not been found to possess child pornography in Georgia, and had not been charged with that offense," Br. at 23, the warrant correctly states the charges in the Georgia case, which are for child molestation and not child pornography, App. 219.

Second, although Kramer argues that the warrant fails to note that Trevor's mother "had informed the film production crew in writing that [Kramer was] the guardian of the youth," Br. at 23, the warrant plainly states that Phillips, a member of the film production crew, informed the police that Trevor's mother had told her that Kramer "is the guardian and that he would be caring for [Trevor] in her absence," App. 219. Similarly, the warrant provides sufficient background

7

regarding Trevor's relationship with Kramer, even though Kramer argues that it fails to note that he "was, with the full knowledge and cooperation of the youth and his mother, assisting the youth in his film and modeling careers." Br. at 23. For example, the warrant cites Trevor's statement to the police that Kramer was helping him "obtain acting opportunities" and that Kramer had "taken photos and videos of him to use them to send to other promoters in order to get acting positions." App. 220.

Third, Kramer's contention that the warrant should have stated that Kramer "was innocent of the charges in Georgia, and had suffered a broken neck at the hands of the courthouse sheriffs there during pretrial detention," Br. at 23, is meritless; among other things, Kramer pled guilty to child molestation and is now a registered sex offender in Georgia. Similarly, Kramer's argument that the warrant should have stated that Kramer had not "had any inappropriate contact with nor taken any inappropriate photographs of the young man," *id.* at 23, is unavailing because the police did not know whether he had had inappropriate contact with Trevor or taken inappropriate photographs of him. Moreover, the warrant *did* state that Trevor had denied any inappropriate contact with Kramer and that Kramer had "ever taken any photos of him unclothed." App. 220. Finally, Kramer's argument that the warrant should have included Kramer's contentions after his arrest that "the Georgia order prohibiting his contact with juveniles had been rescinded" and that Kramer had "a copy of the current order reflecting the same," Br. at 23-24, is frivolous. As mentioned, the Georgia order had not been rescinded, *Kramer v. Comm'r of Corr.*, 56 A.3d at 961-62, and Vitti had confirmed that prior to Kramer's arrest and prosecution.

Defendants' knowledge here of Kramer's past behavior, based on the Georgia prosecution, and Kramer's violation of the modified Georgia bond order prohibiting

8

unsupervised contact with minors, along with the reported observations of Kramer's behavior at the motel and the sworn testimony of two witnesses, provided sufficient information to lead defendants reasonably to believe that Kramer had committed the crime of Risk of Injury to a minor. *See Richards v. Gasparino*, 374 F. App'x 135, 137 (2d Cir. 2010) (summary order) (finding that defendant's "knowledge of [plaintiff's] past behavior, based on a prior December 2003 arrest, along with his observations at [plaintiff's] apartment on the date of the January 2004 arrest, provided sufficient information to lead [defendant] reasonably to believe that [plaintiff] had arguably committed the crime of risk of injury to a minor"). Accordingly, we conclude that, on undisputed facts, no reasonable juror could find in Kramer's favor on probable cause.

Because we affirm on this basis, we do not reach the district court's findings that Kramer failed to adduce evidence sufficient to establish favorable termination and malice or that defendants established their affirmative defense of qualified immunity as a matter of law. We have considered all of Kramer's other contentions on appeal and have found in them no basis for reversal. For the reasons stated herein, the judgment of the district court in favor of defendants is **AFFIRMED**.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk

9